## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BYLINE BANK,
180 North LaSalle Street
Chicago, Illinois 60602

and

COMMUNITY BANK & TRUST – WEST GEORGIA
201 Broad Street
LaGrange, Georgia 30241            Case No. 1:24-cv-3489

      Plaintiffs,

v.

WINGS AIR HELICOPTERS LLC
501 Purchase Street
Rye, New York 10580,

JAD FILMS, INC.
251 Little Falls Drive
Wilmington, Delaware 19808,

JAVIER V. DIAZ
30 Haviland Road
Harrison, New York 10528,

and

AMY S. WALTER
30 Haviland Road
Harrison, New York 10528,

      Defendants,

---

## COMPLAINT

---

Plaintiffs, Byline Bank, an Illinois banking corporation ("Byline"), and Community Bank

& Trust – West Georgia, a domestic non-profit cooperative corporation organized under the laws

of the State of Georgia ("CB&T"), for their Complaint against the above-referenced Defendants, state as follows:

PARTIES

1. Byline is, and at all relevant times has been, an Illinois banking corporation with its headquarters located at 180 North LaSalle Street, Chicago, Illinois 60602. The loans at issue were originated at Byline's principal place of business in the State of Wisconsin, located at 13925 W North Avenue, Brookfield, Wisconsin 53005. Byline is not incorporated in any state other than Illinois and Byline does not have any locations in the State of New York or the State of Delaware.

2. CB&T is, and at all relevant times has been, a domestic non-profit cooperative corporation organized under the laws of the State of Georgia with its headquarters located at 201 Broad Street, LaGrange, Georgia 30241. CB&T is not incorporated in any state other than Georgia and CB&T does not have any locations in the State of New York or the State of Delaware

3. Defendant, Wings Air Helicopters LLC ("Wings"), is, upon information and belief, a New York limited liability company having a registered address of 501 Purchase Street, Rye, New York 10580, a principal place of business located at 67 Tower Road, West Harrison, New York 10604, and a mailing address of 136 Tower Road, West Harrison, New York 10604. Upon information and belief, Wings is not incorporated in any state other than New York, nor does Wings reside or operate in the State of Illinois.

4. Upon information and belief, Wings' sole member is Defendant, Javier V. Diaz ("Diaz"), who is a citizen domiciled in the State of New York .

5. Defendant, JAD Films, Inc. ("JAD"), is, upon information and belief, a Delaware corporation having a registered address of 251 Little Falls Drive, Wilmington, Delaware 19808. Upon information and belief, JAD is not incorporated in any state other than Delaware nor does

Wings reside or operate in the State of Illinois.

6.    Diaz is, upon information and belief, a citizen domiciled in the State of New York having a current last known address of 30 Haviland Road, Harrison, New York 10528.

7.    Defendant, Amy S. Walter ("Walter"), is, upon information and belief, a citizen domiciled in the State of New York having a current last known address of 30 Haviland Road, Harrison, New York 10528.

JURISDICTION AND VENUE

8.    This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a), as this matter involves citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum specified in 28 U.S.C. § 1332 (b).

9.    Venue is proper in the United States District Court for the Northern District of Illinois Eastern District, pursuant to U.S.C. § 1391(b)(2), because, among other things, Byline operates in the State of Illinois, and the parties have contractually agreed that any claims be tried in this District.

FACTS

SBA 7(a) Loan

10.    On October 10, 2018, Wings and JAD (collectively, "Borrowers") made, executed, and delivered to Byline that certain U.S. Small Business Administration note in the original principal amount of $1,260,000.00 ("SBA 7(a) Note"). A true and correct copy of the SBA 7(a) Note is attached hereto as **Exhibit "1"**.

11.    The terms and conditions of the loan, evidenced by the SBA 7(a) Note, are further codified in that certain loan agreement executed by and between Borrowers and Byline dated

October 10, 2018 ("SBA 7(a) Loan Agreement"). A true and correct copy of the SBA 7(a) Loan Agreement is attached hereto as **Exhibit "2"**.

12.     The SBA 7(a) Note is secured, in part, by that certain U.S. Small Business Administration security agreement executed by Borrowers, in favor of Byline, dated October 10, 2018 ("SBA 7(a) Security Agreement"), granting to Byline a perfected security interest in, among other things, all equipment, inventory, accounts, instruments, chattel paper, and general intangibles of Borrowers (collectively, "Business Assets"). A true and correct copy of the SBA 7(a) Security Agreement is attached hereto as **Exhibit "3"**.

13.     The SBA 7(a) Note is further secured by those certain U.S. Small Business Administration guarantees respectively executed by Diaz and Walter (collectively, "Guarantors"), in favor of Byline, each dated October 10, 2018 (collectively, "SBA 7(a) Guarantees"). True and correct copies the SBA 7(a) Guarantees are attached hereto as **Exhibit "4"**.

14.     Events of default occurred under the SBA 7(a) Note due to, among other things, Borrower's failure to timely make the monthly payments when due under the SBA 7(a) Note.

15.     As a result of said events of default, Byline, Borrowers, and Guarantors entered into that certain forbearance and loan modification agreement dated effective June 1, 2020, as modified by that certain second forbearance and loan modification agreement dated effective October 1, 2020 (collectively, "SBA 7(a) Forbearance Agreement"). A true and correct copy of the SBA 7(a) Note Forbearance Agreement is attached hereto as **Exhibit "5"**.

16.     Pursuant to the SBA 7(a) Forbearance Agreement, Borrowers further entered into those certain voluntary surrender of collateral agreements dated effective June 1, 2020, and October 1, 2020 (collectively, "SBA 7(a) Surrender Agreement"). A true and correct copy of SBA 7(a) Surrender Agreement is attached hereto as **Exhibit "6"**.

17.     The SBA 7(a) Note, the SBA 7(a) Loan Agreement, SBA 7(a) Security Agreement, SBA 7(a) Guarantees, SBA 7(a) Forbearance Agreement, SBA 7(a) Surrender Agreement, and all other documents executed in connection therewith shall hereinafter sometimes be referred to collectively as the "SBA 7(a) Loan Documents."

SBA Express Loan

18.     On October 10, 2018, Borrowers made, executed, and delivered to Byline that certain U.S. Small Business Administration note in the original principal amount of $200,000.00 ("SBA Express Note"). A true and correct copy of SBA Express Note is attached hereto as **Exhibit "7"**.

19.     The terms and conditions of the loan, evidenced by the SBA Express Note, are further codified in that certain loan and security agreement executed by and between Borrowers and Byline dated October 10, 2018 ("SBA Express Loan Agreement"). A true and correct copy of the SBA Express Loan Agreement is attached hereto as **Exhibit "8"**.

20.     The SBA Express Note is secured, in part, by that certain U.S. Small Business Administration security agreement executed by Borrowers, in favor of Byline, dated October 10, 2018 ("SBA Express Security Agreement"), granting to Byline a perfected security interest in the Business Assets. A true and correct copy of the SBA Express Security Agreement is attached hereto as **Exhibit "9"**.

21.     The SBA Express Note is further secured by those certain U.S. Small Business Administration unconditional guarantees respectively executed by Guarantors, in favor of Byline, each dated October 10, 2018 (collectively, "SBA Express Guarantees"). True and correct copies of the SBA Express Note Guarantees are attached hereto as **Exhibit "10"**.

22.     The SBA Express Note, the SBA Express Loan Agreement, the SBA Express Security Agreement, SBA Express Financing Statement, SBA Express Guarantees, and all other

documents executed in connection therewith shall hereinafter sometimes be referred to collectively as the "SBA Express Loan Documents."

Conventional Loan

23.     On December 28, 2018, Borrowers made, executed, and delivered to Byline that certain term promissory note in the original principal amount of $348,220.00, as amended, at Borrowers' request, by that certain amended and restated term promissory note dated March 20, 2019 (collectively, "Conventional Note"). A true and correct copy of the Conventional Note is attached hereto as **Exhibit "11"**.

24.     The terms and conditions of the loan, evidenced by the Conventional Note, are further codified in that certain loan agreement executed by Borrowers, in favor of Byline, dated December 28, 2018, as amended, at Borrowers' request, by that certain first amendment to loan agreement dated March 20, 2019 (collectively, "Conventional Loan Agreement"). A true and correct copy of the Conventional Loan Agreement is attached hereto as **Exhibit "12"**.

25.     The Conventional Note is secured, in part, by that certain security agreement executed by Borrowers, in favor of Byline, dated December 28, 2018, as confirmed by that certain confirmation of security agreement and aircraft security agreement dated March 20, 2019 (collectively, "Conventional Security Agreement"), granting to Byline a perfected security interest in the Business Assets.  A true and correct copy of the Conventional Security Agreement is attached hereto as **Exhibit "13"**.

26.     The Conventional Note is further secured, in part, by that certain aircraft security agreement executed by Wings, in favor of Byline, dated December 28, 2018 ("Conventional Aircraft Security Agreement"), granting to Byline a security interest in the following:

a.   Eurocopter, Model: AS355N, Registry No.: N718WA, with that certain Turbomeca engine, Model: Arruis 1A, Serial No.: 2080 and that certain Turbomeca engine, Model: Arruis 1A, Serial No.: 2250;

b.   Aerospatiale, Model: AS350BA, Registry No.: N27WA, with that certain Turbomeca engine, Model: Arriel 1, Serial No.: 4159;

c.   Robinson Helicopter Company, Model: R44 II, Registry No.: N175RV, with that certain Lycoming engine, Model: IO-540-AE1A5, Serial No.: L-23697-48E;

d.   Robinson Helicopter Company, Model: R44 II, Registry No.: N929WA, and that certain Lycoming engine, Model: IO-540-AE1A5, Serial No.: L-37015-48E; and

e.   Airbus Helicopters, Model: AS 350B3, Registry No. N310SW, with that certain Arriel 2D engine, Serial No.: 50424 (collectively, "Aircraft").

A true and correct copy of the Conventional Aircraft Security Agreement is attached hereto as **Exhibit "14"**.

27.   The Conventional Note is further secured by that certain continuing guaranty executed by Diaz, in favor of Byline, dated December 28, 2018 ("Conventional Guaranty"). A true and correct copy of the Conventional Guaranty is attached hereto as **Exhibit "15"**.

28.   Events of default occurred under the Conventional Note due to, among other things, Borrower's failure to timely make the monthly payments when due under the Conventional Note.

29.   As a result of said events of default, Byline, Borrowers, and Diaz entered into that certain forbearance and loan modification agreement dated effective December 28, 2019, as modified and extended, from time to time, most recently evidenced by that certain second forbearance and loan modification agreement dated effective August 28, 2020 (collectively, "Conventional Forbearance Agreement"). A true and correct copy of the Conventional Forbearance Agreement is attached hereto as **Exhibit "16"**.

30.     Pursuant to the Conventional Forbearance Agreement, Borrowers further entered into that certain voluntary surrender of collateral agreement dated effective December 1, 2019 ("Conventional Surrender Agreement"). A true and correct copy of Conventional Surrender Agreement is attached hereto as **Exhibit "17"**.

31.     The Conventional Note, Conventional Loan Agreement, Conventional Security Agreement, Conventional Aircraft Security Agreement, Conventional Guaranty, Conventional Forbearance Agreement, Conventional Surrender Agreement, and all other documents executed in connection therewith shall hereinafter sometimes be referred to collectively as the "Conventional Loan Documents."

USDA Loan

32.     On October 10, 2018, Borrowers made, executed, and delivered to Byline that certain promissory note in the original principal amount of $5,000,000.00 (collectively, "USDA Note"). A true and correct copy of USDA Note is attached hereto as **Exhibit "18"**.

33.     The terms and conditions of the loan, evidenced by the USDA Note, are further codified in that certain loan agreement by and between Borrowers and Byline dated October 10, 2018, as amended, at Borrowers' request, by that certain first amendment to loan agreement dated March 20, 2019 (collectively, "USDA Loan Agreement").  A true and correct copy of the USDA Loan Agreement is attached hereto as **Exhibit "19"**.

34.     The USDA Note is secured, in part, by that certain security agreement executed by Borrowers, in favor of Byline, dated October 10, 2018 (collectively, "USDA Security Agreement"), granting a perfected security interest in the Business Assets.  A true and correct copy of the USDA Security Agreement is attached hereto as **Exhibit "20"**.

35.     The USDA Note is further secured, in part, by that certain aircraft security agreement executed by Wings, in favor of Byline, dated October 10, 2018 (collectively, "USDA Aircraft Security Agreement"), granting a first priority security interest in the Aircraft. A true and correct copy of the USDA Aircraft Security Agreement is attached hereto as **Exhibit "21"**.

36.     The USDA Note is further secured by those certain United States Department of Agriculture Rural Development unconditional guarantees respectively executed by Guarantors, in favor of Byline, each dated October 10, 2018 (collectively, "USDA Guarantees"). True and correct copies of the USDA Note Guarantees are attached hereto as **Exhibit "22"**.

37.     The USDA Note is additionally secured, in part, by that certain collateral assignment of policy executed by Diaz, in favor of Byline, dated August 8, 2018 ("USDA Assignment"), assigning to Byline a life insurance policy insuring the life of Diaz ("Policy"). A true and correct copy of the USDA Assignment is attached hereto as **Exhibit "23"**.

38.     Events of default occurred under the USDA Note due to, among other things, Borrowers' failure to timely make the monthly payments when due under the USDA Note.

39.     As a result of said events of default, Byline, Borrowers, and Guarantors entered into that certain forbearance and loan modification agreement dated effective December 1, 2019 ("USDA Forbearance Agreement"). A true and correct copy of the USDA Forbearance Agreement is attached hereto as **Exhibit "24"**.

40.     Pursuant to the USDA Forbearance Agreement, Borrowers further entered into that certain voluntary surrender of collateral agreement dated effective December 1, 2019 ("USDA Surrender Agreement"). A true and correct copy of USDA Surrender Agreement is attached hereto as **Exhibit "25"**.

41.     The USDA Note, USDA Loan Agreement, USDA Security Agreement, USDA Aircraft Security Agreement, USDA Guarantees, USDA Assignment, USDA Forbearance Agreement, USDA Surrender Agreement, and all other documents executed in connection therewith shall hereinafter sometimes be referred to collectively as the "USDA Loan Documents" or the "USDA Loan."

2023 Events of Default

42.     Borrowers defaulted under the terms of the SBA 7(a) Loan Documents, Express Loan Documents, Conventional Loan Documents, and USDA Loan Documents due to, among other things, Borrowers' failure to timely make the monthly payments when due under the USDA Loan.

43.     As a result of said events of default, Byline pursued a lawsuit against Borrowers and Guarantors in the United States Northern District of Illinois, Case No. 1:22-cv-02652 ("Initial Lawsuit").

44.     To resolve the events of default and the claims asserted in the Initial Lawsuit, Byline, Borrowers, and Guarantors entered into that certain SBA 7(a) loan modification agreement dated May 22, 2023 ("SBA 7(a) Modification"); that certain SBA Express loan modification agreement dated May 22, 2023 ("SBA Express Modification"), that certain conventional loan modification agreement dated May 22, 2023 ("Conventional Modification"), and that certain USDA loan modification agreement dated May 22, 2023 ("USDA Modification") (collectively, "2023 Modification"). True and correct copies of the 2023 Modification are attached hereto as **Exhibit "26"**.

45.     As a result, the Initial Lawsuit was dismissed without prejudice.

Assignment of USDA Loan

46.     Pursuant to the 2023 Modification, on May 31, 2023, Byline assigned its interest in the USDA Loan to CB&T.

47.     In conjunction with the assignment of the USDA Loan to CB&T, Byline and CB&T entered into that certain intercreditor agreement dated May 31, 2023 ("Intercreditor Agreement"), whereby, among other things, Byline and CB&T agreed that 77% of any proceeds obtained from the sale or other disposition of any of the Business Assets, Aircraft, or Policy shall be applied as a recovery to the USDA Loan and 23% of any proceeds obtained from the sale or other disposition of any Business Assets, Aircraft, or Policy shall be applied as a recovery to the SBA 7(a) Loan, SBA Express Loan, and/or Conventional Loan.

Current Events of Default

48.     Events of default have occurred and are continuing under the Conventional Loan Documents, SBA 7(a) Loan Documents, and SBA Express Loan Documents (collectively, "Byline Loans"), due to, among other things, Borrowers' failure to pay the full amount due upon maturity.

49.     Despite Byline's demands on Borrowers and Guarantors to pay the principal, accrued interest, and other charges due and owing under the Byline Loans, Borrowers and Guarantors have failed and refused, and continue to fail and refuse, to remit payment of the same.

50.     Events of default have occurred and are continuing under the USDA Loan due to Borrowers' failure to remit monthly payments when due.

51.     Despite CB&T's demands on Borrowers and Guarantors to pay the principal, accrued interest, and other charges due and owing under the USDA Loan, Borrowers and Guarantors have failed and refused, and continue to fail and refuse, to remit payment of the same

52.     As of April 18, 2024, there was due and owing under the SBA 7(a) Note the total amount of $1,192,815.36, which consists of outstanding principal of $1,060,534.33, accrued but unpaid interest as of April 18, 2024 of $44,777.01, which continues to accrue at the present daily rate of $326.88, late fees of $75,356.02, fees in the amount of $12,147.90, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

53.     As of April 18, 2024, there was due and owing under the SBA Express Note the total amount of $217,300.30, which consists of outstanding principal of $191,822.24, accrued but unpaid interest as of April 18, 2024 of $13,663.93, which continues to accrue at the present daily rate of $59.12, late fees of $11,739.19, fee in the amount of $75.00, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

54.     As of April 18, 2024, there was due and owing under the Conventional Note the total amount of $277,491.38, which consists of outstanding principal of $163,949.07, accrued but unpaid interest as of April 18, 2024 of $11,409.72, which continues to accrue at the present daily rate of $43.26, late fees of $75,799.05, fees in the amount of $26,333.54, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

55.     As of April 29, 2024, there was due and owing under the USDA Loan the total amount of $4,894,667.00, which consists of outstanding principal of $4,727,394.93, accrued but unpaid interest as of April 29, 2024 of $167,272.07, which continues to accrue at the present daily rate of $1,359.93553, late fees of $0.00, and other fees in the amount of $0.00, plus costs of collection, including reasonable attorneys' fees, incurred by CB&T.

56.     The SBA 7(a) Loan Documents, the SBA Express Loan Documents, and the Conventional Loan Documents (collectively, "Byline Loan Documents"), respectively provide that Borrowers and Guarantors (collectively, "Obligors"), shall pay Byline's costs of collection

including, but not limited to, reasonable attorneys' fees in the event that Obligors default in their respective obligations under the Byline Loan Documents.

57.     The USDA Loan Documents provide that Obligors shall pay CB&T's costs of collection including, but not limited to, reasonable attorneys' fees in the event that Obligors default in their obligations under the USDA Loan Documents.

58.     Byline has retained Jellum Law, P.A. and Scott & Kraus, LLC to enforce its rights and remedies under the above-described Byline Loan Documents and to assist it in the collection of all amounts due and owing under the SBA 7(a) Note, SBA Express Note, and Conventional Note (collectively, "Byline Notes").

59.     CB&T has retained Maynard Nexsen, P.C. to enforce its rights and remedies under the above-described USDA Loan Documents and to assist it in the collection of all amounts due and owing under the USDA Note.

<u>CAUSES OF ACTION</u>

FIRST CAUSE OF ACTION
(Breach of Contract-USDA Loan Documents)

For the First Cause of Action of the Complaint herein, CB&T restates and realleges the forgoing Paragraphs as though fully stated herein.

60.     The USDA Loan Documents are based on adequate consideration except that Obligors have failed to perform their duties and obligations thereunder.

61.     CB&T has performed all of its duties and obligations under the USDA Loan Documents.

62.     Obligors have breached the terms and conditions of the USDA Loan Documents, which breaches have damaged CB&T and caused it to incur attorneys' fees and costs of collection.

63.     CB&T is entitled to judgment against Obligors for enforcement of CB&T's rights

under the USDA Loan Documents and for judgment for all amounts remaining due under the USDA Note, plus costs of collection, including reasonable attorneys' fees, incurred by CB&T.

64.     CB&T is accordingly entitled to relief as set forth in the prayer for relief below.

## SECOND CAUSE OF ACTION
### (Breach of Contract-SBA 7(a) Loan Documents)

For the Second Cause of Action of the Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

65.     The SBA 7(a) Loan Documents are based on adequate consideration except that Obligors have failed to perform their duties and obligations thereunder.

66.     Byline has performed all of its duties and obligations under the SBA 7(a) Loan Documents.

67.     Obligors have breached the terms and conditions of the SBA 7(a) Loan Documents, which breaches have damaged Byline and caused it to incur attorneys' fees and costs of collection.

68.     Byline is entitled to judgment against Obligors for enforcement of Byline's rights under the SBA 7(a) Loan Documents and for judgment for all amounts remaining due under the SBA 7(a)Note, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

69.     Byline is accordingly entitled to relief as set forth in the prayer for relief below.

## THIRD CAUSE OF ACTION
### (Breach of Contract-SBA Express Loan Documents)

For the Third Cause of Action of the Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

70.     The SBA Express Loan Documents are based on adequate consideration except that Obligors have failed to perform their duties and obligations thereunder.

71.     Byline has performed all of its duties and obligations under the SBA Express Loan

Documents.

72.     Obligors have breached the terms and conditions of the SBA Express Loan Documents, which breaches have damaged Byline and caused it to incur attorneys' fees and costs of collection.

73.     Byline is entitled to judgment against Obligors for enforcement of Byline's rights under the SBA Express Loan Documents and for judgment for all amounts remaining due under the SBA Express Note, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

74.     Byline is accordingly entitled to relief as set forth in the prayer for relief below.

FOURTH CAUSE OF ACTION<br>(Breach of Contract-Conventional Loan Documents)

For the Fourth Cause of Action of the Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

75.     The Conventional Loan Documents are based on adequate consideration except that Borrowers and Diaz have failed to perform their duties and obligations thereunder.

76.     Byline has performed all of its duties and obligations under the Conventional Loan Documents.

77.     Borrowers and Diaz have breached the terms and conditions of the Conventional Loan Documents, which breaches have damaged Byline and caused it to incur attorneys' fees and costs of collection.

78.     Byline is entitled to judgment against Borrowers and Diaz for enforcement of Byline's rights under the Conventional Loan Documents and for judgment for all amounts remaining due under the Conventional Note, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

79.     Byline is accordingly entitled to relief as set forth in the prayer for relief below.

FIFTH CAUSE OF ACTION
(Unjust Enrichment-USDA Loan Documents)

For the Fifth Cause of Action of the Complaint herein, CB&T restates and realleges the

forgoing Paragraphs as though fully stated herein.

80.     In the event that the Court concludes that the USDA Loan Documents are invalid

or otherwise unenforceable, CB&T seeks relief in the alternative under the equitable doctrine of

unjust enrichment.

81.     The USDA Loan Documents evidence and advance in the amount of

$5,000,000.00, for the benefit of Obligors, for which there remains an unpaid principal balance of

$4,727,394.93 as of April 29, 2024.

82.     Obligors received the proceeds and/or benefits from the amounts advanced under

the USDA Loan, and Obligors continue to retain the benefits arising therefrom, without repaying

CB&T for the same.

83.     Obligors have failed and refused, and continue to fail and refuse, to remit payment

of the loan proceeds advanced in the amount of $5,000,000.

84.     Obligors should not benefit from the aforementioned loan proceeds given that

Obligors have failed to repay the obligations.

85.     Obligors will continue to benefit by retaining said loan proceeds and/or the benefits

therefrom without repaying CB&T for the same, which presents circumstances which would make

it unjust to permit Obligors to retain said loan proceeds and/or the benefits associated therewith,

without repaying the same.

86.     Obligors have been unjustly enriched and injustice can only be avoided by ordering

payment for damages by Obligors for the total amounts due and owing, plus costs of collection,

including reasonable attorneys' fees, incurred by CB&T.

87.     CB&T is accordingly entitled to relief as set forth in the prayer for relief below.

SIXTH CAUSE OF ACTION
(Unjust Enrichment-SBA 7(a) Loan Documents)

For the Sixth Cause of Action of the Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

88.     In the event that the Court concludes that the SBA 7(a) Loan Documents are invalid or otherwise unenforceable, Byline seeks relief in the alternative under the equitable doctrine of unjust enrichment.

89.     Byline advanced $1,260,000.00 to Obligors pursuant to the SBA 7(a) Loan Documents, for which there remains an unpaid principal balance of $1,060,534.33, as of April 18, 2024.

90.     Obligors received the proceeds and/or benefits from the amounts advanced under the SBA 7(a) Note, and Obligors continue to retain the benefits arising therefrom, without repaying Byline for the same.

91.     Obligors have failed and refused, and continue to fail and refuse, to remit payment of the SBA 7(a) Loan proceeds.

92.     Obligors should not benefit from the aforementioned loan proceeds given that Obligors have failed to repay the obligations.

93.     Obligors will continue to benefit by retaining said loan proceeds and/or the benefits therefrom without repaying Byline for the same, which presents circumstances which would make it unjust to permit Obligors to retain said loan proceeds and/or the benefits associated therewith, without repaying the same.

94.     Obligors have been unjustly enriched and injustice can only be avoided by ordering payment for damages by Obligors for the total amounts due and owing, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

95.     Byline is accordingly entitled to relief as set forth in the prayer for relief below.

SEVENTH CAUSE OF ACTION
(Unjust Enrichment-SBA Express Loan Documents)

For the Seventh Cause of Action of the Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

96.     In the event that the Court concludes that the SBA Express Loan Documents are invalid or otherwise unenforceable, Byline seeks relief in the alternative under the equitable doctrine of unjust enrichment.

97.     Byline advanced $200,000.00 to Obligors, pursuant to the SBA Express Loan Documents, for which there remains an unpaid principal balance of $191,822.24 as of April 18, 2024.

98.     Obligors received the proceeds and/or benefits from the amounts advanced under the SBA Express Note, and Obligors continue to retain the benefits arising therefrom, without repaying Byline for the same.

99.     Obligors have failed and refused, and continue to fail and refuse, to remit payment of the loan proceeds advanced.

100.     Obligors should not benefit from the aforementioned loan proceeds given that Obligors have failed to repay the obligations.

101.     Obligors will continue to benefit by retaining said loan proceeds and/or the benefits therefrom without repaying Byline for the same, which presents circumstances which would make

it unjust to permit Obligors to retain said loan proceeds and/or the benefits associated therewith, without repaying the same.

102.    Obligors have been unjustly enriched and injustice can only be avoided by ordering payment for damages by Obligors for the total amounts due and owing, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

103.    Byline is accordingly entitled to relief as set forth in the prayer for relief below.

EIGHTH CAUSE OF ACTION
(Unjust Enrichment-Conventional Loan Documents)

For the Eighth Cause of Action of the Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

104.    In the event that the Court concludes that the Conventional Loan Documents are invalid or otherwise unenforceable, Byline seeks relief in the alternative under the equitable doctrine of unjust enrichment.

105.    Byline advanced $348,220.00 to Borrowers and Diaz, pursuant to the Conventional Loan Documents, for which there remains an unpaid principal balance of $163,949.07, as of April 18, 2024.

106.    Borrowers and Diaz received the proceeds and/or benefits from the amounts advanced under the Conventional Note, and Borrowers and Diaz continue to retain the benefits arising therefrom, without repaying Byline for the same.

107.    Borrowers and Diaz have failed and refused, and continue to fail and refuse, to remit payment of the loan proceeds advanced.

108.    Borrowers and Diaz should not benefit from the aforementioned loan proceeds given that Borrowers and Diaz have failed to repay the obligations.

109.    Borrowers and Diaz will continue to benefit by retaining said loan proceeds and/or the benefits therefrom without repaying Byline for the same, which presents circumstances which would make it unjust to permit Borrowers and Diaz to retain said loan proceeds and/or the benefits associated therewith, without repaying the same.

110.    Borrowers and Diaz have been unjustly enriched and injustice can only be avoided by ordering payment for damages by Borrowers and Diaz for the total amounts due and owing, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

111.    Byline is accordingly entitled to relief as set forth in the prayer for relief below.

NINTH CAUSE OF ACTION
(Promissory/Equitable Estoppel-USDA Loan Documents)

For the Ninth Cause of Action of the Complaint herein, CB&T restates and realleges the forgoing Paragraphs as though fully stated herein.

112.    In the event that the Court concludes that the USDA Loan Documents are invalid or otherwise unenforceable, CB&T seeks relief in the alternative under the equitable doctrine of promissory/equitable estoppel.

113.    Obligors made numerous promises and representations to CB&T including, without limitation, that Obligors would abide by the terms and conditions of the USDA Loan Documents. These promises and representations were made with the full knowledge that CB&T would rely thereon by entering into the loan transactions evidenced by the USDA Loan Documents.

114.    Obligors knew, or should have known, that such promises and representations would induce action or forbearance of a definite and substantial character on CB&T's behalf.

115.    CB&T did reasonably rely upon the promises and representations of Obligors, by entering into the USDA Loan Documents.

116.    Injustice can only be avoided by estopping Obligors from denying the

aforementioned promises and representations and that CB&T be entitled to judgment against Obligors for the total amounts due and owing under the USDA Note, plus costs of collection, including reasonable attorneys' fees, incurred by CB&T.

117.    CB&T is accordingly entitled to relief as set forth in the prayer for relief below.

TENTH CAUSE OF ACTION
(Promissory/Equitable Estoppel-SBA 7(a) Loan Documents)

For the Tenth Cause of Action of the Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

118.    In the event that the Court concludes that the SBA 7(a) Loan Documents are invalid or otherwise unenforceable, Byline seeks relief in the alternative under the equitable doctrine of promissory/equitable estoppel.

119.    Obligors made numerous promises and representations to Byline including, without limitation, that Obligors would abide by the terms and conditions of the SBA 7(a) Loan Documents. These promises and representations were made with the full knowledge that Byline would rely thereon by entering into the loan transactions evidenced by the SBA 7(a) Loan Documents.

120.    Obligors knew, or should have known, that such promises and representations would induce action or forbearance of a definite and substantial character on Byline's behalf.

121.    Byline did reasonably rely upon the promises and representations of Obligors, by entering into the SBA 7(a) Loan Documents.

122.    Injustice can only be avoided by estopping Obligors from denying the aforementioned promises and representations and that Byline be entitled to judgment against Obligors for the total amounts due and owing under the SBA 7(a) Note, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

123.    Byline is accordingly entitled to relief as set forth in the prayer for relief below.

ELEVENTH CAUSE OF ACTION
(Promissory/Equitable Estoppel-SBA Express Loan Documents)

For the Eleventh Cause of Action of the Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

124.    In the event that the Court concludes that the SBA Express Loan Documents are invalid or otherwise unenforceable, Byline seeks relief in the alternative under the equitable doctrine of promissory/equitable estoppel.

125.    Obligors made numerous promises and representations to Byline including, without limitation, that Obligors would abide by the terms and conditions of the SBA Express Loan Documents. These promises and representations were made with the full knowledge that Byline would rely thereon by entering into the loan transactions evidenced by the SBA Express Loan Documents.

126.    Obligors knew, or should have known, that such promises and representations would induce action or forbearance of a definite and substantial character on Byline's behalf.

127.    Byline did reasonably rely upon the promises and representations of Obligors, by entering into the SBA Express Loan Documents.

128.    Injustice can only be avoided by estopping Obligors from denying the aforementioned promises and representations and that Byline be entitled to judgment against Obligors for the total amounts due and owing under the SBA Express Note, plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

129.    Byline is accordingly entitled to relief as set forth in the prayer for relief below.

TWELFTH CAUSE OF ACTION
(Promissory/Equitable Estoppel-Conventional Loan Documents)

For the Twelfth Cause of Action of the Complaint herein, Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

130.    In the event that the Court concludes that the Conventional Loan Documents are invalid or otherwise unenforceable, Byline seeks relief in the alternative under the equitable doctrine of promissory/equitable estoppel.

131.    Borrowers and Diaz made numerous promises and representations to Byline including, without limitation, that Borrowers and Diaz would abide by the terms and conditions of the Conventional Loan Documents. These promises and representations were made with the full knowledge that Byline would rely thereon by entering into the loan transactions evidenced by the Conventional Loan Documents.

132.    Borrowers and Diaz knew, or should have known, that such promises and representations would induce action or forbearance of a definite and substantial character on Byline's behalf.

133.    Byline did reasonably rely upon the promises and representations of Borrowers and Diaz, by entering into the Conventional Loan Documents.

134.    Injustice can only be avoided by estopping Borrowers and Diaz from denying the aforementioned promises and representations and that Byline be entitled to judgment against Borrowers and Diaz for the total amounts due and owing under the Conventional Note plus costs of collection, including reasonable attorneys' fees, incurred by Byline.

135.    Byline is accordingly entitled to relief as set forth in the prayer for relief below.

## THIRTEENTH CAUSE OF ACTION
(Adjudication of Security Interest-USDA Security Agreement and USDA Aircraft Security Agreement-Intercreditor Agreement)

For the Thirteenth Cause of Action of the Complaint herein, Byline and CB&T restate and reallege the forgoing Paragraphs as though fully stated herein.

136. To secure Borrowers' obligations to CB&T, Borrowers, as grantors, conveyed to CB&T a security interest in the Business Assets, pursuant to the USDA Security Agreement.

137. To further secure Borrowers' obligations to CB&T, Borrowers, as grantors, conveyed to CB&T a security interest in the Aircraft, pursuant to the USDA Aircraft Security Agreement.

138. CB&T, as a perfected secured creditor of Borrowers in and to the Collateral, is entitled to relief, as set forth in the USDA Security Agreement, USDA Aircraft Security Agreement, and at law.

139. Pursuant to the Intercreditor Agreement, 77% of proceeds obtained from the sale or disposition of the Collateral shall be applied to the USDA Loan and 23% of the proceeds shall be applied the Byline Loans.

140. CB&T and Byline are accordingly entitled to relief as set forth in the prayer for relief below.

## FOURTEENTH CAUSE OF ACTION
(Adjudication of Security Interest-SBA 7(a) Security Agreement-Intercreditor Agreement)

For the Fourteenth Cause of Action of the Complaint herein, Byline and CB&T restate and reallege the forgoing Paragraphs as though fully stated herein.

141. To secure Borrowers' obligations to Byline, Borrowers, as grantors, conveyed to Byline a security interest in the Business Assets, pursuant to the SBA 7(a) Security Agreement.

142. Byline, as a secured creditor of Borrowers in and to the Business Assets, is entitled to relief, as set forth in the SBA 7(a) Security Agreement, and at law.

143. Pursuant to the Intercreditor Agreement, 77% of proceeds obtained from the sale or disposition of the Collateral shall be applied to the USDA Loan and 23% of proceeds shall be

applied the Byline Loans.

144.    Byline and CB&T are accordingly entitled to relief as set forth in the prayer for relief below.

## FIFTEENTH CAUSE OF ACTION
(Adjudication of Security Interest-SBA Express Security Agreement-Intercreditor Agreement)

For the Fifteenth Cause of Action of the Complaint herein, Byline and CB&T restate and reallege the forgoing Paragraphs as though fully stated herein.

145.    To secure Borrowers' obligations to Byline, Borrowers, as grantors, conveyed to Byline a security interest in the Business Assets, pursuant to the SBA Express Security Agreement.

146.    Byline, as a perfected secured creditor of Borrowers in and to the Business Assets, is entitled to relief, as set forth in the SBA Express Security Agreement and at law.

147.    Pursuant to the Intercreditor Agreement, 77% of proceeds obtained from the sale or disposition of the Collateral shall be applied to the USDA Loan and 23% of proceeds shall be applied the Byline Loans.

148.    Byline and CB&T are accordingly entitled to relief as set forth in the prayer for relief below.

## SIXTEENTH CAUSE OF ACTION
(Adjudication of Security Interest-Conventional Security Agreement and Conventional Aircraft Security Agreement-Intercreditor Agreement)

For the Sixteenth Cause of Action of the Complaint herein, Byline and CB&T restate and reallege the forgoing Paragraphs as though fully stated herein.

149.    To secure Borrowers' obligations to Byline, Borrowers, as grantors, conveyed to Byline a security interest in the Business Assets, pursuant to the Conventional Security Agreement.

150.    To further secure Borrowers' obligations to Byline, Borrowers, as grantors, conveyed to Byline a security interest in the Aircraft, pursuant to the Conventional Aircraft Security Agreement.

151.    Byline, as a perfected secured creditor of Borrowers in and to the Collateral, is

entitled to relief, as set forth in the Conventional Security Agreement, Conventional Aircraft Security Agreement, and at law.

152.    Pursuant to the Intercreditor Agreement, 77% of proceeds obtained from the sale or disposition of the Collateral shall be applied to the USDA Loan and 23% of proceeds shall be applied the Byline Loans.

153.    Byline and CB&T are accordingly entitled to relief as set forth in the prayer for relief below.

SEVENTEENTH CAUSE OF ACTION
(Replevin-USDA Loan-Intercreditor Agreement)

For the Seventeenth Cause of Action of the Complaint herein, Byline and CB&T restate and reallege the forgoing Paragraphs as though fully stated herein.

154.    Pursuant to the terms of the USDA Security Agreement and USDA Aircraft Security Agreement, upon the occurrence of an event of default, CB&T is entitled to take possession of the Collateral.

155.    Moreover, pursuant to the terms of the USDA Surrender Agreement, upon the occurrence of an event of default, CB&T is entitled to take possession of the Collateral.

156.    CB&T has demanded that Borrowers surrender possession of the Collateral to Byline.

157.    Borrowers have failed and refused to surrender possession of the Collateral to CB&T.

158.    The Collateral is wrongfully being detained by Borrowers.

159.    The Collateral has not been seized by any process, execution, or attachment.

160.    Pursuant to the Intercreditor Agreement, 77% of proceeds obtained from the sale or disposition of the Collateral shall be applied to the USDA Loan and 23% of proceeds shall be applied the Byline Loans.

161.    CB&T and Byline are entitled to the entry of an order authorizing the issuance of a

writ of replevin requiring the U.S. Marshall to take the Collateral into the U.S. Marshall's possession and deliver it to CB&T and Byline.

162.    Byline and USDA accordingly entitled to relief as set forth in the prayer for relief below.

EIGHTEENTH CAUSE OF ACTION
(Replevin-SBA 7(a) Loan-Intercreditor Agreement)

For the Eighteenth Cause of Action of the Complaint herein, Byline and CB&T restate and reallege the forgoing Paragraphs as though fully stated herein.

163.    Pursuant to the terms of the SBA 7(a) Security Agreement, upon the occurrence of an event of default, Byline is entitled to take possession of the Business Assets.

164.    Moreover, pursuant to the terms of the SBA 7(a) Surrender Agreement, upon the occurrence of an event of default, Byline is entitled to take possession of the Business Assets.

165.    Byline has demanded that Borrowers surrender possession of the Business Assets to Byline.

166.    Borrowers have failed and refused to surrender possession of the Business Assets to Byline.

167.    The Business Assets are wrongfully being detained by Borrowers.

168.    The Business Assets have not been seized by any process, execution, or attachment.

169.    Pursuant to the Intercreditor Agreement, 77% of proceeds obtained from the sale or disposition of the Collateral shall be applied to the USDA Loan and 23% of proceeds shall be applied the Byline Loans.

170.    Byline and CB&T are entitled to the entry of an order authorizing the issuance of a writ of replevin requiring the U.S. Marshall to take the Business Assets into the U.S. Marshall's possession and deliver it to Byline and CB&T.

171.    Byline and CB&T are accordingly entitled to relief as set forth in the prayer for relief below.

## NINETEENTH CAUSE OF ACTION
### (Replevin-SBA Express Loan-Intercreditor Agreement)

For the Nineteenth Cause of Action of the Complaint herein, Byline and CB&T restate and reallege the forgoing Paragraphs as though fully stated herein.

172.    Pursuant to the terms of the SBA Express Security Agreement, upon the occurrence of an event of default, Byline is entitled to take possession of the Business Assets.

173.    Byline has demanded that Borrowers surrender possession of the Business Assets to Byline.

174.    Borrowers have failed and refused to surrender possession of the Business Assets to Byline.

175.    The Business Assets are wrongfully being detained by Borrowers.

176.    The Business Assets has not been seized by any process, execution, or attachment.

177.    Pursuant to the Intercreditor Agreement, 77% of proceeds obtained from the sale or disposition of the Collateral shall be applied to the USDA Loan and 23% of proceeds shall be applied the Byline Loans.

178.    Byline and CB&T are entitled to the entry of an order authorizing the issuance of a writ of replevin requiring the U.S. Marshall to take the Business Assets into the U.S. Marshall's possession, and deliver it to Byline and CB&T.

179.    Byline and CB&T are accordingly entitled to relief as set forth in the prayer for relief below.

## TWENTIETH CAUSE OF ACTION
### (Replevin-Conventional Loan-Intercreditor Agreement)

For the Twentieth Cause of Action of the Complaint herein, Byline and CB&T restate and reallege the forgoing Paragraphs as though fully stated herein.

180.   Pursuant to the terms of the Conventional Security Agreement and Conventional Aircraft Security Agreement, upon the occurrence of an event of default, Byline is entitled to take possession of the Collateral.

181.   Moreover, pursuant to the terms of the Conventional Surrender Agreement, upon the occurrence of an event of default, Byline is entitled to take possession of the Collateral.

182.   Byline has demanded that Borrowers surrender possession of the Collateral to Byline.

183.   Borrowers have failed and refused to surrender possession of the Collateral to Byline.

184.   The Collateral is wrongfully being detained by Borrowers.

185.   The Collateral has not been seized by any process, execution, or attachment.

186.   Pursuant to the Intercreditor Agreement, 77% of proceeds obtained from the sale or disposition of the Collateral shall be applied to the USDA Loan and 23% of proceeds shall be applied the Byline Loans.

187.   Byline and CB&T are entitled to the entry of an order authorizing the issuance of a writ of replevin requiring the U.S. Marshal to take the Collateral into the U.S. Marshal's possession, and deliver it to Byline and CB&T.

188.   Byline and CB&T are accordingly entitled to relief as set forth in the prayer for relief below.

<u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiffs, Byline Bank, an Illinois banking corporation, and Community Bank & Trust – West Georgia, a domestic non-profit cooperative corporation organized under the laws of the State of Georgia, request judgment as follows:

1.      Pursuant to the First, Fifth, and Ninth Causes of Action set forth herein, for judgment in favor of Plaintiff, Community Bank & Trust – West Georgia, against Defendants, Wings Air Helicopters LLC, JAD Films, Inc., Javier V. Diaz, and  Amy S. Walter, jointly and severally, for the total amount due and owing under the USDA Note which, as of April 29, 2024, totaled $4,894,667.00, which consists of outstanding principal of $4,727,394.93, accrued but unpaid interest to April 29, 2024 of $167,272.07, which continues to accrue at the present daily rate of $1,359.93553, plus costs of collection, including reasonable attorneys' fees, incurred by Plaintiff, Community Bank & Trust – West Georgia.

2.      Pursuant to the Second, Sixth, and Tenth Causes of Action set forth herein, for judgment in favor of Plaintiff, Byline Bank, against Defendants, Wings Air Helicopters LLC, JAD Films, Inc., Javier V. Diaz, and  Amy S. Walter, jointly and severally, for the total amount due and owing under the SBA 7(a) Note which, as of April 18, 2024, the total amount of $1,192,815.36, which consists of outstanding principal of $1,060,534.33, accrued but unpaid interest as of April 18, 2024 of $44,777.01, which continues to accrue at the present daily rate of $326.88, late fees of $75,356.02, fees in the amount of $12,147.90, plus costs of collection, including reasonable attorneys' fees, incurred by Plaintiff, Byline Bank.

3.      Pursuant to the Third, Seventh, and Eleventh Causes of Action set forth herein, for judgment in favor of Plaintiff, Byline Bank, against Defendants, Wings Air Helicopters LLC, JAD Films, Inc., Javier V. Diaz, and  Amy S. Walter, jointly and severally, for the total amount due and

owing under the SBA Express Note which, as of April 18, 2024 totaled $217,300.30, which consists of outstanding principal of $191,822.24, accrued but unpaid interest as of April 18, 2024 of $13,663.93, which continues to accrue at the present daily rate of $59.12, late fees of $11,739.19, fee in the amount of $75.00, plus costs of collection, including reasonable attorneys' fees, incurred by Plaintiff, Byline Bank.

4. Pursuant to the Fourth, Eighth, and Twelfth Causes of Action set forth herein, for judgment in favor of Plaintiff, Byline Bank, against Defendants, Wings Air Helicopters LLC, JAD Films, Inc., and Javier V. Diaz, jointly and severally, for the total amount due and owing under the Conventional Note which, as of April 18, 2024 totaled of $277,491.38, which consists of outstanding principal of $163,949.07, accrued but unpaid interest as of April 18, 2024 of $11,409.72, which continues to accrue at the present daily rate of $43.26, late fees of $75,799.05, fees in the amount of $26,333.54, plus all costs of collection, including reasonable attorneys' fees, incurred by Plaintiff, Byline Bank.

5. Pursuant to the Thirteenth, Fourteenth, Fifteenth, and Sixteenth Causes of Action set forth herein, for a judgment determining that the obligations of Defendants, Wings Air Helicopters LLC and JAD Films, Inc., under the Loan Documents, are secured by Plaintiff, CB&T's and Byline's shared perfected security interest in the Collateral.

6. Pursuant to the Thirteenth, Fourteenth, Fifteenth, and Sixteenth Causes of Action set forth herein, for a judgment determining that 77% of the proceeds obtained from the sale or disposition of the Collateral shall be applied to the USDA Loan and 23% of proceeds shall be applied to the Byline Loans.

7. Pursuant to the Seventeenth, Eighteenth, Nineteenth, and Twentieth Causes of Action set forth herein, for a judgment entitling Plaintiffs to possession of the Collateral, issuing

a writ of replevin requiring the U.S. Marshall to seize the Collateral and deliver it to Plaintiffs, and granting Plaintiffs the power and right to sell the Collateral and apply the proceeds of such sale(s) by applying 77% of proceeds obtained from the sale or disposition of the Collateral to the USDA Loan and 23% of proceeds to the Byline Loans.

       8.      For the award of prejudgment and post judgment interest.

       9.      For the award of Plaintiffs' attorneys' fees and costs incurred herein, pursuant to the terms of the Loan Documents.

       10.     For such other and further relief as the Court deems just and equitable.

DATED this 29th day of April 2024.

**RESPECTFULLY SUBMITTED,**

*/s/ Garth G. Gavenda*
Garth G. Gavenda
JELLUM LAW, P.A.
7616 Currell Blvd, Suite 245
Woodbury, Minnesota 55125
T: (651) 439–2951
F: (651) 439–1417
Garth.Gavenda@JellumLaw.com

and

/s/ *Miles V. Cohen*
Miles V. Cohen
SCOTT & KRAUS, LLC
150 South Wacker Drive, Suite 2900
Chicago, IL 60606
T: (321) 327-1059
F: (312) 327-1051
MCohen@skcounsel.com

Attorneys for Plaintiff, Byline Bank

_/s/ Peter A. Santos_
Peter A. Santos
Lisa P. Sumner
MAYNARD NEXSEN, P.C.
227 W Trade St #1550
Charlotte, North Carolina 28202
T: (704) 338-5336
PSantoas@maynardnexsen.com
LSumner@maynardnexsen.com

Attorneys for Plaintiff, Community Bank & Trust –
West Georgia